FILED

[stamp illegible]

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SEAN A. LOVE | : | CASE NO. 302CV1960 (EBB) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF GRANBY, DOUGLAS CLARK and | : | |
| ROBERT CASTLE | : | |
| Defendants | : | MARCH 25, 2004 |

## OBJECTION TO MOTION FOR INSPECTION

### I.    INTRODUCTION

The Plaintiff, Sean A. Love, filed a Motion for Immediate Inspection and Motion to Restrain Destruction or Tampering, dated March 19, 2004.  In response, the Defendants, Town of Granby [hereinafter "Town"], Douglas Clark and Robert Castle hereby submit this Objection.

### II.    FACTS

The Plaintiff filed a Complaint dated November 6, 2002, against the Defendants and an Amended Complaint dated January 20, 2003.  The Plaintiff alleges causes of action for violation of his civil rights, false arrest, false imprisonment and sexual assault and battery.  The Plaintiff's claims arise out of his arrest on November 11, 2000.  Specifically, the Plaintiff alleges that, after being pulled over by the Defendant police

officers for failing to have his tail lights on, the Defendant police officers sexually assaulted and threatened him.

In his Motion, the Plaintiff moves for a preliminary inspection of the police personnel files maintained by Chief David Watkins and now-deceased Chief Jeremiah Marren in their respective computers.  The Plaintiff also requests that the court enter an order requiring the Town to state whether any computer files have been modified since they were created.  The Plaintiff further requests that the court order the Town to refrain from modifying or destroying any files contained in Chief Watkins' or Chief Marron's personal computers.

### III.   LAW AND ARGUMENT

#### A.   Standard of Review

Rule 26 (b) (1) provides in relevant part that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26. "[T]he scope of discovery under Fed.R.Civ.P. 26(b) is very broad, encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (Internal quotation marks omitted.)

Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992).

Although Rule 26 provides for broad discovery, it also contains certain limitations to discovery. Discovery may be limited by order of the court where "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26 (b) (2).

"An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case." O'Bar v. Borough of Naugatuck, United States District Court, District of Connecticut, Docket No. Civ. 3:01CV867(PCD) (Dorsey, J. December 3, 2002) (Attached hereto).

Although Rule 26 provides for broad discovery, the Freedom of Information Act, Connecticut General Statutes § 1-200 et seq., limits the Town's ability to produce

3

certain documents.  Specifically, § 1-210 (b) provides in relevant part that "[n]othing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy."  General Statutes § 1-210 (b).  The court has applied this section of the Freedom of Information Act to cases where a defendant has requested disclosure of a police officer's personnel file.  See State v. Spyke, 68 Conn. App. 97, 107, 792 A.2d 93, cert denied, 261 Conn. 909, 804 A.2d 214 (2002); see also State v. Januszewski, 182 Conn. 142, 438 A.2d 679 (1980).

In discussing the disclosure of a police officer's personnel file, the court in Januszewski stated: "The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case.  Where disclosure of the personnel file would place in the hands of a defendant irrelevant or personal and sensitive information concerning the witness, the entire file should not be disclosed.  No criminal defendant has the right to conduct a general 'fishing expedition' into the personnel records of a police officer.  Any request for information that does not directly relate to legitimate issues that may arise in the course of the criminal prosecution ought to be denied."  State v. Januszewski, supra, 182 Conn. 172.

SILVESTER & DALY
72 RUSS STREET • HARTFORD, CONNECTICUT 06106 • (860) 278-2650 • FAX (860) 727-9243

The court has applied <u>Januszewski</u> to civil matters in <u>Rosado v. Bridgeport</u> <u>Roman Catholic Diocesan Corp.</u>, Superior Court, Docket No. CV 93 0300272 (*Levin, J.* December 8, 1994) (See Attached). As the court indicated in <u>Rosado</u>, "[i]n resolving requests for disclosure, routine access to personnel files is not to be had. Requests for information should be specific and should set forth the issue in this case to which the personnel information sought will relate. The trial court should make available to the [party] only information that it concludes is clearly material and relevant to the issue involved." (Internal quotation marks omitted.) Id. (citing <u>Januszewski</u>, supra, 182 Conn. 172-73).

**B.    Examination of Computers**

The Plaintiff requests that he be allowed to inspect the personnel files saved on the computers maintained by Chief Watkins and Chief Marron at least twice. Specifically, the Plaintiff requests that his counsel be allowed to preliminarily inspect the computers and then subsequently have a computer expert examine the computers.

The Defendants object to this request and submit that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. As Chief Watkins explained at his deposition, the computer maintained by the Chief contains certain files and documents that cannot be accessed by all the users

5

of the network at the Granby Police Department.  For example, Chief Watkins maintains

private files[1] relating to grievances; assignments of internal affairs investigations; draft

revisions of general orders; emergency medical services and north central emergency

services team.  See Exhibit A, Deposition of David Watkins [hereinafter "Watkins

Deposition"], pgs. 39-42.  Additionally, Chief Watkins keeps personal notes and/or

records of meetings or conversations that he has had throughout the course of

business.  See Exhibit B, Watkins Deposition, pgs. 50-53.

Although Chief Watkins maintains various documents and files in the private

section of his computer, he never testified that he keeps or maintains any personnel

files in the private or public sections of this computer.  Rather, Chief Watkins stated that

personnel files of police officers are not kept in the police department, but are

maintained somewhere else by the Town.  See Exhibit C, Watkins Deposition, pg. 54.

Similarly, Chief Watkins also stated in the Town's Responses to Interrogatories that

Town's Finance Officer has custody of the personnel files.  See Exhibit D, Response to

Interrogatory 44.

In the Plaintiff's Requests for Production, the Plaintiff requested that the Town

provide "Any written or printed document, memorandum or paper setting forth any

---

[1] The Defendants use the term "private" to describe files that cannot be accessed through the network.
Comparatively, the term "public" is used to describe files that can be accessed through the network.

violation of department rules, guidelines or policies in the personnel records of defendants Clark and defendant Castle." Exhibit E, Request for Production, No. 10. On April 17, 2003, the Town, through Chief Watkins, produced all the unprotected records that it possessed that were responsive to this request, including a memorandum that Chief Watkins maintained in the private section of his computer. See Exhibit F, Watkins Deposition, pg. 34. As the Chief testified, the memorandum was saved in a private section of his computer, and was kept as personal notes that he made regarding a civilian telephone call about Officer Clark. See Exhibit G, Watkins Deposition, pg. 31-32.

The Plaintiff seeks to inspect Chief Watkins' computer, including personnel files relating to all the police officers of the Granby Police Department. Said inspection is overly broad in that it will allow the Plaintiff access to files unrelated to this law suit, including files that relate to police officers other than the individual Defendants. As stated previously, the Town has already complied with the Plaintiff's requests for production and produced all the documents that relate to this matter that are in the Town's control and that are not protected. Thus, the Plaintiff's request to inspect Chief Watkins' computer is not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, the Defendants further object to the Plaintiff's request in that it seeks information that may be privileged.  The Plaintiff requests inspection of personnel files, which may contain information that if discovered, would be an invasion of the police officers' privacy, including medical records.

### C.    Modifications of Computer Files

The Plaintiff requests that the court enter an order prohibiting the Town and any police officers from "modifying, destroying, erasing or otherwise eliminating or changing any computer files of Police Chief Watkins and former Police Chief Marron contained in either chief's personal computer, including any computer no longer being used, which relate to police personnel."  See Plaintiff's Motion, page 2.  The Defendants again submit that this request is overly broad in that it requests that the Town take no action with regard to *any* computer file that it might maintain on these computers.  The Plaintiff fails to offer any argument or make a showing as to how the personnel files of Granby police officers other than the Defendants relate to this matter.  Moreover, any order that prevented the Town from modifying, erasing or changing any personnel files on the computers is burdensome to the Town.

The Plaintiff also requests that the court enter an order requiring the Town to disclose whether any personnel files on the computers have been modified.  Such a

SILVESTER & DALY
72 RUSS STREET  •  HARTFORD, CONNECTICUT 06106  •  (860) 278-2650  •  FAX (860) 727-9243

request of is overly burdensome, in that it requests information that the Town does not readily have access to. Furthermore, as stated above, this request is overly broad because it does not request information relating to only the Defendants' personnel files but information relating to all of the police officers' personnel files.

### D.    Chief Marron's Computer

The Plaintiff seeks to discover and inspect files that are allegedly saved on Chief Marron's computer. Chief Marron is now deceased. Although he did use a laptop computer when he was employed as chief of police, the Town does not know where the laptop computer presently is and the Town is not in control of said laptop computer. Thus, the Defendants are unable to comply with the Plaintiff's requests for inspection of Chief Marron's laptop computer. Even if the Town does locate the laptop computer belonging to Chief Marron, however, the Defendants object to the Plaintiff's requests relating to the laptop computer for the same reasons that they objected to the requests relating to Chief Watkins' computer.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Defendants, Town of Granby, Douglas Clark and Robert Castle hereby object to the Plaintiff's Motion for Immediate Inspection and Motion to Restrain Destruction or Tampering.

SILVESTER & DALY
72 RUSS STREET  •  HARTFORD, CONNECTICUT 06106  •  (860) 278-2650  •  FAX (860) 727-9243

THE DEFENDANTS,
TOWN OF GRANBY, DOUGLAS CLARK
and ROBERT CASTLE

By: _____
    JOSEPHINE A. SPINELLA
    Silvester & Daly
    72 Russ Street
    Hartford, CT 06103
    Tel. (860) 278-2650
    Federal Bar No. CT24009

## CERTIFICATION

    I, Josephine A. Spinella, attorney for the Defendants, hereby certify that a copy of the foregoing has been mailed, postage prepaid, in the United States Mail, this 25th day of March, 2004 to:

Patsy M. Renzullo
65 Elm Street
P.O. Box 718
Winsted, CT 06098

By: _____
    JOSEPHINE A. SPINELLA
    Silvester & Daly

nai-love/obj.mot for inspection.032404

Slip Copy
(Cite as: 2002 WL 32178969 (D.Conn.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Caroline O'BAR, Plaintiff,
v.
BOROUGH OF NAUGATUCK, et al., Defendants.

**No. Civ. 3:01CV867(PCD).**

Dec. 3, 2002.

*RULINGS ON MOTION TO COMPEL AND
MOTION FOR SANCTIONS*

DORSEY, J.

**\*1** Presently before this court are plaintiff's motion to compel and motion for sanctions. For the reasons set forth herein, motion to compel is granted in part and the motion for sanctions is denied. Familiarity with prior discovery rulings and orders is presumed.

**I. MOTION FOR AN ORDER COMPELLING DISCOVERY**

Plaintiff moves for an order compelling production of disciplinary files and personnel files of defendants Dennis Chisham and Thomas Hunt, in addition to production of records for police officers Jennifer Wilmot, Kelly Grant, Marc O'Mara and Marcus Jacobowski, allegedly officers selected before plaintiff for assignment and evidence of defendants discriminatory practices. Defendant objected to the requests on the grounds of confidentiality of the records and the untimeliness of the request.

A. Standard

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ' *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389,

57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case. *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996).

B. Analysis

Plaintiff argues that defendants personnel files are relevant for purposes of establishing her claims for negligent training and supervision of the individual defendants by the defendant Borough of Naugatuck. Plaintiff further argues that the remaining personnel files are necessary to establish a baseline for purposes of establishing discriminatory treatment of plaintiff in regard to promotions, special assignments and overtime compensation.

Notwithstanding plaintiff's technical noncompliance with D. CONN. L.R. 9(d)(3) and the timing of her motion, in order to accommodate both defendants' confidentiality concerns and plaintiff's request for discoverable material, and having reviewed plaintiff's discovery requests and the objections thereto, defendants are hereby ordered to provide the following information responsive to plaintiff's motion and discovery requests:

**\*2** 1. Details as to any grievances/complaints filed against the individual defendants Dennis Chisham and Thomas Hunt and the disposition of such complaint/grievance, including the date of complaint, date of disposition and any written product of the proceeding, including notices of proceeding, letters or reprimand/caution and administrative opinions documenting such proceedings, if such exist.

2. As to defendants' records for Jennifer Wilmot, Kelly Grant, Marc O'Mara and Marcus Jacobowski, for the time period of January 1, 1999, through January 31, 2001, provide (1) the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2002 WL 32178969 (D.Conn.))

Page 2

date on which each started his/her employment
with defendant Borough of Naugatuck, (2) any
promotions received by each, including the
corresponding dates of selection for and
promotion to the higher position, (3) any special
assignments given each, including the
corresponding dates of selection for and
assignment to the position, and (3) overtime
accrued by each, including details as to total
overtime during the relevant period, dates on
which overtime was permitted, and details of
assignments on which overtime was permitted,
i.e., a short description of the nature of the
overtime assignment.

The above information is deemed relevant to
plaintiff's claims and discoverable. Information
provided in response to the above order is both
responsive to plaintiff's discovery requests and
sufficiently narrow in scope so as to avoid
unnecessary disclosure of confidential information.
This Court declines plaintiff's invitation to engage
in *in camera* review of the above personnel records
to determine if there is otherwise discoverable
material in the files. Defendants' shall provide
information responsive to the above order within
two weeks of the date this order issues.

II. MOTION FOR SANCTIONS

Plaintiff moves to sanction defendants for use of a
damages analysis provided to defendants for
purposes of settlement discussions. The same
document was the subject of this Court's order
directing plaintiff to respond properly to defendants'
discovery request for an itemized list of damages
sustained by plaintiff at which time the document in
question was provided. It is thus not apparent that
defendants' conduct was wrongful in light of the
confusion evidenced by the correspondence
between plaintiff and defendants that resulted in
that order. In any event, as the subject document
was submitted to this Court as an attachment to
motions to compel, plaintiff may not seek sanctions
pursuant to Fed. R. Civ. P. 11(c). *See* Fed. R. Civ.
P. 11(d); *N.Y. v. Solvent Chem. Co.*, NO.
83-CV-1401C, 2002 WL 31190938, at *10
(W.D.N.Y. Sep. 27, 2002). The motion is denied.

III. CONCLUSION

Based on the foregoing, plaintiff's motion to
compel discovery (Doc. 87) is granted in part and

plaintiff's motions for sanctions (Doc. 90) is denied.

SO ORDERED.

2002 WL 32178969 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# Westlaw.

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

Page 1

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Fairfield.

George L. ROSADO, et al.
v.
BRIDGEPORT ROMAN CATHOLIC DIOCESAN CORPORATION, et al.

No. CV 93 0300272S.

Dec. 8, 1994.

MEMORANDUM OF DECISION
RE MOTIONS FOR PROTECTIVE ORDERS

LEVIN, Judge.

*1 The plaintiff alleges that he was sexually assaulted by the defendant Raymond Pcolka while Pcolka was a priest employed by the defendant Bridgeport Roman Catholic Diocesan Corporation (Diocese). During the times that the plaintiff alleges that he was assaulted by Pcolka, the defendant Bishop Walter Curtis was the chief officer of the Diocese. The plaintiff alleges that the Diocese and Bishop Curtis are liable for his assault based on their negligent supervision of Pcolka and on the doctrine of respondeat superior.

The plaintiff noticed the depositions of Pcolka, Bishop Curtis and Bishop Edward Eagan. Pursuant to Practice Book § 244(f) [FN1] the plaintiff included in that notice a request that the defendants produce certain documents at those depositions. Pursuant to Practice Book § 221, [FN2] the defendants have moved for protective orders with respect to those requests to produce and also have moved for a protective order with respect to the

"use and dissemination" of discovery information obtained through the depositions.

FN1. Practice Book § 244(f) provides: "The notice [of deposition] to a party deponent may be accompanied by a request made in compliance with Sec. 226 for the production of documents and tangible things at the taking of the deposition. The procedure of Sec. 226 shall apply to the request."
Practice Book § 226 merely is a heading for subsequent sections pertaining to requests for production, inspection and examination. Practice Book § 227 provides: "(a) In any civil action, in any probate appeal, or in any administrative appeal where the court finds it reasonably probable that evidence outside the record will be required, any party may serve in accordance with Sec. 120 upon any other party a request to afford the party submitting the request the opportunity to inspect, copy, photograph or otherwise reproduce designated documents (including, but not limited to, writings, drawings, graphs, charts, photographs and phonograph records) or to inspect and copy, test or sample any tangible things in the possession, custody or control of the party upon whom the request is served or to permit entry upon designated land or other property for the purpose of inspection, measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon. Such requests will be governed by the provisions of Sec. 217.
In all personal injury actions except those alleging death or product liability, the requests for production served shall be limited to those set forth in Practice Book Forms 106.11A and 106.11B, unless, upon motion, the court determines that such requests for production are inappropriate or inadequate in the particular action.
"Requests for production may be served

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

Page 2

upon any party without leave of court at any time after the return day.

"The request shall clearly designate the items to be inspected either individually or by category. The request shall specify a reasonable time, place and manner of making the inspection. Unless the court orders otherwise, the frequency of use of requests for production in all actions except those for which requests for production have been set forth in Practice Book Forms 106.11A and 106.11B is not limited.

"(b) The party serving such request shall not file it with the court."

FN2. Practice Book "Sec. 221. Protective Order (Discovery and Depositions) Upon motion by a party from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."

I.

With respect to the defendants' motion for protective order directed to the plaintiff's request

that the defendants produce documents kept by them pertaining to the defendant Pcolka, the court finds that all such documents are contained in what constitutes a "personnel file", as defined in General Statutes § 31-128a(3). [FN3] This is so notwithstanding evidence that the Diocese, in fact, may not be the "employer" of Pcolka for all purposes. However, the plaintiff has alleged that the Diocese is Pcolka's employer, the Diocese and the Roman Catholic Church are organizations sui generis, and the evidence indicates that, if only for purposes of discovery, it is appropriate to treat the Diocese as the employer. The contents of that personnel file are subject to disclosure in the discretion of the court pursuant to the express terms of General Statutes § 31-128f, notwithstanding Pcolka's claims to the contrary.

FN3. General Statutes § 31-128a(3) provides: " 'Personnel file' means papers, documents and reports pertaining to a particular employee which are used or have been used by an employer to determine such employee's eligibility for employment, promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action including employee evaluations or reports relating to such employee's character, credit and work habits. 'Personnel file' does not mean stock option or management bonus plan records, medical records, letters of reference or recommendations from third parties including former employers, materials which are used by the employer to plan for future operations, information contained in separately maintained security files, test information, the disclosure of which would invalidate the test, or documents which are being developed or prepared for use in civil, criminal or grievance procedures...."

General Statutes § 31-128f provides in relevant part: "No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except ... where the disclosure is made ... (2) pursuant to a lawfully issued ... judicial

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

order, including a ... subpoena, or in response to ... defense of personnel-related complaints against the employer...." Notably, neither this statute nor any other to which the court's attention has been directed confers a general privilege or confidential status on the personnel files of private institutions. Compare General Statutes §§ 52- 146b to 52-146q; cf. General Statutes § 1-19(b)(2) (restricting the disclosure of personnel files of a public agency; *Hartford v. Freedom of Information Commission,* 201 Conn. 421, 429-30, 518 A.2d 49 [1986] ).

That the file is *subject* to disclosure, however, does not end the matter. " 'The granting or denial of a discovery request rests in the sound discretion of the court.' *Standard Tallow Corporation v. Jowdy,* 190 Conn. 48, 57, 459 A.2d 503 (1983); *Kiessling v. Kiessling,* 134 Conn. 564, 568, 59 A.2d 532 (1948). That discretion applies to 'decisions concerning whether the information is material, privileged, substantially more available to the disclosing party, or within the disclosing party's knowledge, possession or power....' *Standard Tallow Corporation v. Jowdy,* supra, 59-60." *Brown v. Housing Authority,* 23 Conn.App. 624, 583 A.2d 643 (1990). " 'Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " *State v. Arbour,* 29 Conn.App. 744, 748, 618 A.2d 60 (1992).

*2 Generally, the rules of civil discovery are liberally construed. *Lougee v. Grinnell,* 216 Conn. 483, 489, 582 A.2d 456 (1990); *Sanderson v. Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 140, 491 A.2d 389 (1985). This judicial policy, however, is qualified where the object of discovery is a personnel file. "The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case. Where disclosure of the personnel file would place in the hands of a [party] irrelevant or personal and sensitive information concerning ... [another], the entire file should not be disclosed. No ... [party] has the right to conduct a general 'fishing expedition' into the personnel records of a[nother]. Any request for information that does not directly relate to legitimate issues that may arise in the course of the ... [trial] ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said: 'It has been widely noted that such

records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility.' *People v. Sumpter,* 75 Misc.2d 55, 60, 347 N.Y.S.2d 670 (1973) Because discovery of matters contained in a ... personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in determining what matters shall be disclosed. An in camera inspection of the documents involved, therefore, will under most circumstances be necessary. *See United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Commonwealth v. Dominico,* [1 Mass.App.Ct. 693, 306 N.E.2d 835 (1974) ]; *People v. Bottom,* 76 Misc.2d 525, 351 N.Y.S.2d 328 (1974).... [I]n resolving requests for disclosure, routine access to personnel files is not to be had. Requests for information should be specific and should set forth the issue in the case to which the personnel information sought will relate. The trial court should make available to the [party] only information that it concludes is clearly material and relevant to the issue involved. *See People v. Fraiser,* 75 Misc.2d 756, 757, 348 N.Y.S.2d 529 (1973) (subpoena duces tecum issued for personnel files of police witnesses in prosecution for possession and sale of controlled drugs). In this regard, the trial court should exercise its discretion in deciding the temporal relevancy or remoteness of material sought. Cf. *State v. Carbone,* 172 Conn. 242, 262, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977); *State v. Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 (1969) ; *State v. Towles,* 155 Conn. 516, 523-24, 235 A.2d 639 (1967) (relating to the introduction of evidence at trial); see also 1 Wharton, Criminal Evidence (12th Ed.) 151. Because the law furnishes no precise or universal test of relevancy, the question must be determined on a case by case basis according to the teachings of reason and judicial experience." *State v. Januszewski,* 182 Conn. 142, 172-173, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981); see *State v. Harris,* 227 Conn. 751, 765-768, 631 A.2d 309 (1993). Although *Januszewski* involved an attempt by a criminal defendant to subpoena the personnel file of a police officer witness in a criminal prosecution in order to impeach the officer's credibility, the policies and pronouncements in that case are largely applicable

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1994 WL 700344 (Conn.Super.))**

Page 4

here. In camera review by the court reasonably satisfies the plaintiff's need for information necessary to establish his case while respecting a civil defendant's limited expectation of privacy in his personnel file as reflected in the implicit policy of General Statutes § 31-128f that the documents in such files not be cavalierly divulged by an employer.

**\*3** Accordingly, the court has undertaken an in camera review of Pcolka's personnel file and orders certain documents disclosed to the plaintiff contemporaneously with the filing of this decision. The report of the Institute of Living, to which reference was made during oral argument, shall not be disclosed at this time, there having been no showing that that report is not protected from disclosure by General Statutes §§ 52-146d to 52-146f. [FN4]

> FN4. General Statutes "Sec. 52-146d. (Formerly Sec. 52-146a). Privileged communications between psychiatrist and patient. Definitions. As used in sections 52-146d to 52-146i, inclusive:
> "(1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;
> "(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative;
"(4) 'Identifiable' and 'identify a patient' refer to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records;
"(5) 'Mental health facility' includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition;
"(6) 'Patient' means a person who communicates with or is treated by a psychiatrist in diagnosis or treatment;
"(7) 'Psychiatrist' means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified."
General Statutes "Sec. 52-146e. Disclosure of communications. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.
"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment. "(c) The patient or his authorized representative may withdraw

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

General Statutes "Sec. 52-146c. Privileged communications between psychologist and patient. (a) As used in this section:

"(1) 'Person' means an individual who consults a psychologist for purposes of diagnosis or treatment;

"(2) 'Psychologist' means an individual licensed to practice psychology pursuant to chapter 383;

"(3) 'Communications' means all oral and written communications and records thereof relating to the diagnosis and treatment of a person between such person and a psychologist or between a member of such person's family and a psychologist;

"(4) 'Consent' means consent given in writing by the person or his authorized representative;

"(5) 'Authorized representative' means (A) an individual empowered by a person to assert the confidentiality of communications which are privileged under this section, or (B) if a person is deceased, his personal representative or next of kin, or (C) if a person is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the person, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the person's nearest relative.

"(b) Except as provided in subsection (c) of this section, in civil and criminal actions, in juvenile, probate, commitment and arbitration proceedings, in proceedings preliminary to such actions or proceedings, and in legislative and administrative proceedings, all communications shall be privileged and a psychologist shall not disclose any such communications unless the person or his authorized representative consents to waive the privilege and allow such disclosure. The person or his authorized representative may withdraw

any consent given under the provisions of this section at any time in a writing addressed to the individual with whom or the office in which the original consent was filed. The withdrawal of consent shall not affect communications disclosed prior to notice of the withdrawal.

"(c) Consent of the person shall not be required for the disclosure of such person's communications:

"(1) If a judge finds that any person after having been informed that the communications would not be privileged, has made the communications to a psychologist in the course of a psychological examination ordered by the court, provided the communications shall be admissible only on issues involving the person's psychological condition;

"(2) If, in a civil proceeding, a person introduces his psychological condition as an element of his claim or defense or, after a person's death, his condition is introduced by a party claiming or defending through or as a beneficiary of the person, and the judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and psychologist be protected;

"(3) If the psychologist believes in good faith that there is risk of imminent personal injury to the person or to other individuals or risk of imminent injury to the property of other individuals;

"(4) If child abuse, abuse of an elderly individual or abuse of an individual who is disabled or incompetent is known or in good faith suspected;

"(5) If a psychologist makes a claim for collection of fees for services rendered, the name and address of the person and the amount of the fees may be disclosed to individuals or agencies involved in such collection, provided notification that such disclosure will be made is sent, in writing, to the person not less than thirty days prior to such disclosure. In cases where a dispute arises over the fees or claims or where additional information is needed to substantiate the claim, the disclosure of further information shall be limited to the following: (A) That the person was in fact

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

receiving psychological services, (B) the dates of such services, and (C) a general description of the types of services; or

"(6) If the communications are disclosed to a member of the immediate family or legal representative of the victim of a homicide committed by the person where such person has, on or after July 1, 1989, been found not guilty of such offense by reason of mental disease or defect pursuant to section 53a-13, provided such family member or legal representative requests the disclosure of such communications not later than six years after such finding, and provided further, such communications shall only be available during the pendency of, and for use in, a civil action relating to such person found not guilty pursuant to section 53a-13."

General Statutes "Sec. 52-146f. Consent not required for disclosure, when. Consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the following situations as specifically limited:

"(1) Communications or records may be disclosed to other persons engaged in the diagnosis or treatment of the patient or may be transmitted to another mental health facility to which the patient is admitted for diagnosis or treatment if the psychiatrist in possession of the communications or records determines that the disclosure or transmission is needed to accomplish the objectives of diagnosis or treatment. The patient shall be informed that the communications or records will be so disclosed or transmitted. For purposes of this subsection, persons in professional training are to be considered as engaged in the diagnosis or treatment of the patients.

"(2) Communications or records may be disclosed when the psychiatrist determines that there is substantial risk of imminent physical injury by the patient to himself or others or when a psychiatrist, in the course of diagnosis or treatment of the patient, finds it necessary to disclose the communications or records for the purpose of placing the patient in a mental health facility, by certification, commitment or otherwise, provided the provisions of

sections 52-146d to 52-146j, inclusive, shall continue in effect after the patient is in the facility.

"(3) Except as provided in section 17-295c, the name, address and fees for psychiatric services to a patient may be disclosed to individuals or agencies involved in the collection of fees for such services. In cases where a dispute arises over the fees or claims or where additional information is needed to substantiate the fee or claim, the disclosure of further information shall be limited to the following: (A) That the person was in fact a patient; (B) the diagnosis; (C) the dates and duration of treatment; and (D) a general description of the treatment, which shall include evidence that a treatment plan exists and has been carried out and evidence to substantiate the necessity for admission and length of stay in a health care institution or facility. If further information is required, the party seeking the information shall proceed in the same manner provided for hospital patients in section 4-105.

"(4) Communications made to or records made by a psychiatrist in the course of a psychiatric examination ordered by a court or made in connection with the application for the appointment of a conservator by the probate court for good cause shown may be disclosed at judicial or administrative proceedings in which the patient is a party, or in which the question of his incompetence because of mental illness is an issue, or in appropriate pretrial proceedings, provided the court finds that the patient has been informed before making the communications that any communications will not be confidential and provided the communications shall be admissible only on issues involving the patient's mental condition.

"(5) Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when his condition is introduced by a party claiming or defending through or as a beneficiary of the patient and the court or judge finds that it is more important to the interests of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected.

"(6) Communications or records may be disclosed to the commissioner of health services in connection with any inspection, investigation or examination of an institution, as defined in subsection (a) of section 19a- 490, authorized under section 19a-490.

"(7) Communications or records may be disclosed to a member of the immediate family or legal representative of the victim of a homicide committed by the patient where such patient has, on or after July 1, 1989, been found not guilty of such offense by reason of mental disease or defect pursuant to section 53a-13, provided such family member or legal representative requests the disclosure of such communications or records not later than six years after such finding, and provided further, such communications shall only be available during the pendency of, and for use in, a civil action relating to such person found not guilty pursuant to section 53a-13."

II.

In his notices of deposition the plaintiff also has requested "[a]ll documents, correspondence, memoranda, notes, communications, concerning any complaints, investigations, disciplinary proceedings, or dispositions ever received by the diocese, the bishop or any agent of [sic] employee of the Diocese regarding sexual misconduct by [*any* ] priests who at any time were members of the Diocese. Any records concerning any documents concerning sexual misconduct by [*any* ] priests which may have been transferred or destroyed and are thus no longer in the possession of the Diocese." (Sic)

A request for production of documents whether made in connection with a notice of deposition or made independent of such a notice must be within the ambit of the scope of discovery as defined in Practice Book § 218. See Practice Book §§ 227, 244(f). Practice Book § 218 provides in relevant part: "In any civil action ... a party may obtain in

accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books or documents *material to the subject matter* involved in the pending action, *which are not privileged,* whether the discovery or disclosure relates to the claim or defense of the party seeking discovery or to the claim or defense of an other party, and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed. Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. It shall not be ground for objection that the information sought will be inadmissible at trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*" (Emphasis added.)

It is axiomatic that whether evidence is admissible is a function of the manner in which that evidence is presented and the rules of evidence. However, in general, unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of an issue. *Burns v. Gould,* 172 Conn. 210, 214, 374 A.2d 193 (1977). The scope of discovery, therefore, must be ascertained with reference to the issues in the case, recognizing, however, that "[i]nformation material to the subject matter of a lawsuit certainly includes a broader spectrum of data than that which is material to the precise issues raised in the pleadings." *Lougee v. Grinnell,* supra, 216 Conn. 489. (1990).

*\*4* In his complaint, the plaintiff alleges that the Diocese and Bishop Curtis are liable to him for Pcolka's acts under the doctrine of respondeat superior and also because they were negligent in that they knew or should have known of Pcolka's aberrant conduct or nature yet permitted him to have access to young people.

" 'The underlying rationale of the modern doctrine of respondeat superior ... is that "every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others *while they are engaged upon his business* and within the scope of their authority."

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

Page 8

*Wolf v. Sulik*, 93 Conn. 431, 436, 106 A. 443 [1919] ; *Durso v. A.D. Cozzolino, Inc.*, 128 Conn. 24, 27, 20 A.2d 392 [1941]. But *it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered* in order for the doctrine to apply.' (Emphasis added.) *Mitchell v. Resto*, 157 Conn. 258, 262, 253 A.2d 25 (1968); see also *Cardona v. Valentin*, 160 Conn. 18, 22, 273 A.2d 697 (1970) (employer liable for wilful torts of his employee when they are committed in furtherance of the employer's business)." *Gutierrez v. Thorne*, 13 Conn.App. 493, 537 A.2d 527 (1988). The plaintiff has not explained, nor has the court divined, how pouring through the personnel files of numerous clergymen other than Pcolka could reasonably lead to the discovery of evidence material to the issue of respondeat superior.

With respect to the plaintiff's claim that the Diocese and Bishop Curtis were negligent in their supervision of Pcolka, the plaintiff argues that if they were allowed to uncover numerous other incidents of sexual abuse of children by other priests this would be evidence that the Diocese should have promulgated policies proscribing priests from bringing children to their private rooms. Firstly, that is not what the plaintiff has alleged. Secondly, assuming ad Arguendo that Pcolka performed the heinous acts alleged against him, and that those acts were outside the scope of his employment; *Gutierrez v. Thorne*, supra, 13 Conn.App. 493-499; the Diocese and Bishop Curtis would be liable only if they knew or had reason to know that Pcolka had the propensity for such conduct. Restatement (Second) Torts § 317(b)(ii), [FN5] and Comment *c* of the Reporter's Notes thereto; *Simmons v. Baltimore Orioles, Inc.*, 712 F.Supp. 79, 81 (W.D.Va.1989); *Peck v. Siau*, 65 Wash.App. 285, 293-94, 827 P.2d 1108, 1113 (1992); *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1221 (Alaska 1991); *Bender v. First Church of the Nazarene*, 59 Ohio App.3d 68, 571 N.E.2d 475 (1989); *Destefano v. Grabian*, 763 P.2d 275, 287-288 (Colo.1988).

 FN5. Restatement (Second) Torts § 317, entitled "Duty of Master to Control Conduct of Servant", provides: "A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming

others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) *knows or should know of the necessity and opportunity for exercising such control.*" (Emphasis added.)

The plaintiff relies on *Hutchinson v. Luddy*, 606 A.2d 905 (Pa.Super.1992), involving claims against a priest, a bishop and a diocese similar to those here. In that case, the trial court granted a widesweeping request for production, such as that sought here, and the appeals court affirmed. In *Hutchinson*, however, the issue was not whether such a request was within the scope of permissible discovery. Rather, the issue, as framed by the court on appeal was "whether a church can avoid the discovery of relevant information in a civil action against the church by putting it in a place which is designated by canon law as a 'secret archive.' " Id., 906. "It is the general rule that a case resolves only those issues explicitly decided in the case." *State v. Ouellette*, 190 Conn. 84, 91, 459 A.2d 1005 (1983).

*5 It is, of course, *possible* that admissible evidence might be discovered were the court to allow the plaintiff to scour the personnel files of the many priests who have served the Diocese since its inception. That, however, is not the test to which this court is duty-bound to adhere. Broadly construing both the allegations of the complaint and the scope of discovery, the court finds that this request for documents is not *reasonably* calculated to lead to the discovery of admissible evidence. Practice Book § 218. Moreover, the evidence adduced by the Diocese established that attempting to comply with such a request would impose undue burden and expense on the Diocese. Practice Book § 221. As to this aspect of the subpoenas, the defendants' motion for a protective order is granted.

III.

The defendants seek a protective order prohibiting the disclosure to others of information and documents obtained through the depositions of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 700344 (Conn.Super.))

defendants and Bishop Eagan.

"At the outset, it is important to recognize the extent of the impairment of First Amendment rights that a protective order, such as the one at issue here, may cause. As in all civil litigation, [the plaintiffs will obtain] the information they wish to disseminate only by virtue of the court's discovery processes." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In Connecticut, the rules authorizing such discovery are adopted by the legislature; see General Statutes §§ 52-148 to 52-159; and by the judiciary. Practice Book § 216 et seq; see *State v. Clemente,* 166 Conn. 501, 512-516, 353 A.2d 723 (1974). "A litigant has no First Amendment right of access to information made available only for purposes of trying his suit.... Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *Seattle Times Co. v. Rhinehart,* supra.

"Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law.... Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." (Footnote omitted.) *Seattle Times Co. v. Rhinehart,* supra, 467 U.S. 33.

"Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny.... In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." *Seattle Times Co. v. Rhinehart,* supra, 467 U.S. 33- 34.

*6 "Because of the liberality of pretrial discovery permitted by ... [Practice Book § 216 et seq.], it is necessary for the trial court to have authority to issue protective orders conferred by ... [Practice Book § 221]. It is clear from experience that pretrial discovery by depositions and interrogatories has a

significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.... There is an opportunity, therefore, for litigants to obtain--incidentally or purposefully-- information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.... The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders." (Footnotes omitted.) *Seattle Times Co. v. Rhinehart,* supra, 467 U.S. 34-36. "[T]herefore ... where ... a protective order is entered on a showing of good cause as required by ... [Practice Book § 221], is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." Id., 37.

The defendants have advanced two principal grounds which, they claim, rise to the level of good cause for the issuance of a protective order. The first ground is that such an order is necessary to protect the reputation of the defendants, especially the Diocese, and persons affiliated with them. The Diocese claims that its ability to obtain young people as volunteers in its religious ceremonies and its ability to perform good works has already been hampered by the publicity surrounding this case and that such damage will continue unless the requested protective order issues. Having heard the evidence, the court is not persuaded that disclosure of the products of pretrial discovery will visit such serious permanent damage on the defendants which, alone, would warrant, a protective order. In so holding, however, this court recognizes that at least one other court has held otherwise in an analogous situation; *Shenandoah Publishing House, Inc. v. Fanning,* 368 S.E.2d 253, 257-58 (Va.1988); and that the Second Circuit Court of Appeals has observed that "[p]rotective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial. Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titilate the public." *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982).

The second principal ground asserted by the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works