UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SEAN A. LOVE | : | |
| | : | |
| v. | : | CIV. NO. 3:02CV1960 (EBB) |
| | : | |
| TOWN OF GRANBY, ET AL | : | |
| | : | |
| | : | |

RECOMMENDED RULING ON SUMMARY JUDGMENT

Plaintiff Sean Love brings this civil rights action under
§1983 against the Town of Granby and Granby Police Officers
Douglas Clark and Robert Castle, who arrested him.  He alleges
false arrest, false imprisonment, sexual assault, and battery in
violation of his Fourth and Fourteenth Amendment rights under the
United States Constitution.[1]  Specifically, plaintiff contends
that, as a result of the defendant officers' actions and remarks,
repressed childhood memories of sexual assaults at the hand of
his natural father flashed back and caused him serious
psychological injuries.

Defendants move for summary judgment, contending that, based
on the undisputed facts, they are entitled to judgment as a
matter of law. For the reasons that follow, defendants' Motion
for Summary Judgment **[Doc. #46]** is **GRANTED** in part and **DENIED** in
part.

---

[1]Plaintiff contends that the sexual assault and battery
claim is a violation of the Fourth and Fourteenth Amendments, not
pendent state law claims as defendants assert.

STANDARD OF LAW

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  See  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998);  see also  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, (1986).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.  See D'Amico, 132 F.3d at 149.  Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. See  Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998).  To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252.  If the evidence produced by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.  See id. at 249-50.

Pursuant to D. Conn. L. Civ. R. 56(a)(3),

> Each statement of material fact in a Local Rule 56(a)1 Statement by a movant or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e).

> Counsel and pro se parties are hereby
> notified that failure to provide specific
> citations to evidence in the record as
> required by this Local Rule may result in
> sanctions, including, when the movant fails
> to comply, an order denying the motion for
> summary judgment, and, when the opponent
> fails to comply, an order granting the
> motion.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary

3

judgment.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871,
888 (1990).


FACTS

     Based on defendants' Local 56(a)(1) Statement and exhibits
and plaintiff's Local 56(a)2 Statement and exhibits, the
following facts are undisputed.

     On November 11, 2000, at approximately 21:29 hours,
plaintiff Sean Love, who was nineteen (19) years old, was
operating a motor vehicle eastbound on East Granby Road in
Granby, Connecticut. [Def. 56(a)(1) Stat., Doc. #48 at ¶ 1].
Granby Police Officer Douglas Clark was on duty, monitoring
traffic at the intersection of East Granby Road and Park Place.
Id. at 2.  Plaintiff passed Officer Clark, and Officer Clark
observed that plaintiff's motor vehicle had inoperable tail
lamps.  Id. at 3.  As a result, Officer Clark effected a motor
vehicle stop.  Id. at 4.  While the stop was occurring, Officer
Clark observed furtive movements of the occupants in the motor
vehicle.  Officer Clark also noticed both rear passengers bend
forward as if to reach for or conceal an item underneath the
front seat. Id. at 5.

     After stopping the motor vehicle, Officer Clark approached
to speak with plaintiff.  Id. at 6.  While Officer Clark was
talking with plaintiff, Officer Castle arrived at the scene.  Id.
at 7.  Officer Castle got out of his patrol car and stood
approximately fifteen (15) feet away from plaintiff's motor

4

vehicle.  Id. at 8.

While Officer Clark was talking with plaintiff, he observed
that plaintiff appeared extremely nervous.  Id. at 9.  Plaintiff
apologized to Officer Clark repeatedly and stated that a fuse
must have blown.  Id. at 10.  Officer Clark used a flashlight to
look in the motor vehicle, where he noticed several bottles of
alcoholic beverages.  Id. at 11. The bottles were still cold, and
Officer Clark could see condensation on the bottles, which were
hidden underneath the seat. Id. at 12.  Officer Clark asked
plaintiff to step outside the vehicle and performed a pat down.[2]
Officer Clark detected alcohol on plaintiff's breath and smelled
marijuana on plaintiff. Id. at 14.  Plaintiff told Officer Clark
that he had used marijuana about one (1) to two (2) hours
earlier.  Id. at 15.  Officer Clark performed a field sobriety
test on plaintiff and noticed that plaintiff's eyes lacked smooth
pursuit.[3] Id. at 16.

Plaintiff was subsequently handcuffed and charged with

_____

[2]The parties dispute what happened during the pat down.
Defendants contend "Officer Clark performed a Terry pat down" of
plaintiff. [Def. 56(a)1 Stat. ¶ 13].  Plaintiff attests that
"Officer Clark then frisked me and when his hands got to my groin
area, he grabbed my scrotum and said, "You haven't been felt like
this in a long time, you faggot." [Pl. Ex. A ¶ 11; Pl. Ex. F
Schieb Stat. at 4].  He further attests that Officer Castle was
present and did not intervene. [Pl. Ex. A ¶ 13; Pl. Ex. Schieb
Stat. at 3-4].  Ky Schieb, a passenger in the car, corroborates
plaintiff's testimony.

[3]Defendants assert that a Horizontal Gaze Nystagmus test was
performed on plaintiff. Plaintiff admits the statement of fact
but calls the test "a field sobriety test." [Doc. #51 at 16].
This dispute is not material to the issue before the Court on
summary judgment.

Possession of Alcohol by a Minor, Conn. Gen. Stat. §30-89b; and
Failure to Have Tail Lamps, Conn. Gen. Stat. §14-96c.  Id. at 18.
He was also given a written warning for Failure to Have Tail
Lamp, Conn. Gen. Stat. §14-98c; and Possession of Alcohol by a
Minor in a Motor Vehicle, Conn. Gen. Stat. §14-111a. Id. at 19.
Plaintiff was transported to Granby Police Department by Officer
Clark, fingerprinted and processed.  Id. at 20.  He was released
later that night on a five hundred dollar non-surety bond.  Id.
at 21.  Plaintiff performed twenty (20) hours of community
service in exchange for a nolle.  Id. at 22.

    Disputed Issues of Material Fact

    Plaintiff asserts in his Local 56(a)2 Statement that the
following issues of material fact are in dispute.

    Plaintiff attests that when he was patted down by Officer
Clark, Officer Clark frisked him and "when his hands got to my
groin area, he grabbed my scrotum and said, 'You haven't felt
like this in a long time, you faggot.'" Pl. Ex. A ¶ 11.  He avers
that Officer Clark used profanity and called him a faggot.  Id.
at ¶ 12-13.  He stated that Officer Castle, the ranking officer,
was present and did not intervene.  Id. at 13.  Plaintiff also
claims that he submitted to a breathalyzer test at the police
station and it came back negative. Id. at 19. Plaintiff avers
that Officers Clark and Castle threatened to put a wig on him and
place him in a cell with "a big, black, guy in a rear cell named
Bubba." Id. at 22-24.  "Castle opened the desk drawer and said he
was looking for a wig to put on me because 'Bubba' liked it when

6

you wore a wig." Id. at 23.  Plaintiff contends he was subjected
to intimidation at the police station by the defendant officers.
Id. at 21-24.

Ky Schieb, a passenger in the car during the stop, was
transported to the police station with plaintiff and was  placed
in the lockup with plaintiff.  His statement corroborates
plaintiff's testimony. [Pl. Ex. F at 3-10].  Jamie Leifert,
another passenger in the car, corroborates plaintiff's testimony
regarding the stop and frisk by Officer Clark. [Pl. Ex. C at 50-
52].

DISCUSSION

1.    Claims Against Officers Clark and Castle

A.    Fourth Amendment: False Arrest and False Imprisonment

"A Section 1983 claim for false arrest [or false
imprisonment] rest[s] on the Fourth Amendment right of an
individual to be free from unreasonable seizures, including
arrest without probable cause." Sulkowska v. City of N.Y., 129
F. Supp. 2d 274, 287 (S.D.N.Y. 2001) (internal quotation marks
omitted).

There is no dispute that, on November 11, 2000, the then-19
year old plaintiff was driving with an inoperable tail lamp.
There is no dispute that there were open alcoholic beverages in
the car.  Plaintiff does not challenge the propriety of the stop
on the basis of the faulty tail lamps and he does not challenge
his arrest for possession of alcohol by a minor, Conn. Gen. Stat.

7

§ 30-89(b), or for the infraction of failure to have tail lamps. Conn. Gen. Stat. §14-96c. Finally, there is no dispute that plaintiff performed twenty hours of community service in exchange for a nolle.

In Connecticut, the tort of false arrest is synonymous with that of false imprisonment. Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996). "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." Id. (quoting Green v. Donroe, 186 Conn. 265, 267 (1982)). Because plaintiff does not challenge the validity of the stop and arrest, defendants correctly argue that plaintiff cannot maintain a cause of action for false arrest and false imprisonment.

> It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor. Roesch v. Otarola, 980 F.2d 850, 852 (2d Cir. 1992). A criminal proceeding terminates in favor of the plaintiff only when its "final disposition is such as to indicate the accused is not guilty." Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980). A nolle, like "[a]n adjournment in contemplation of dismissal, . . . involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt."

Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003). Because plaintiff has failed to show that the underlying criminal proceeding terminated in his favor, he is barred from bringing a Section 1983 false arrest or false imprisonment claim

Id.  Plaintiff offered no opposing argument or case law.
Accordingly, summary judgment shall enter in favor of defendants
on the federal false arrest and false imprisonment claims.


    B.    Fourth Amendment Prohibition Against Unreasonable
          Search and Seizure: Sexual Assault and Battery

    Defendants first argue that plaintiff's claims of sexual
assault and battery are state law claims and that this Court
should decline to exercise pendent jurisdiction. [Doc. #47 at 18-
20].  Plaintiff asserts that the sexual assault and battery
claims are not pendent state law claims.  He argues that a Fourth
Amendment violation occurred during the pat down by Officer Clark
and the subsequent threats and intimidation by both Officers
Clark and Castle at the Granby police station. [Doc. #50 at 5-6].
Plaintiff maintains that the officers' actions during his arrest
and confinement form the factual basis for a Fourth Amendment
claim for unreasonable search and seizure. Id.

    Defendants argue in their reply brief that "claims of sexual
assault by a police officer do not fall under the Fourth
Amendment," and should be brought under the Fourteenth Amendment.
[Doc. #54]. However, none of the cases relied on by defendants
involved an arrest or other custodial situation. The Fourth
Amendment is not the proper source of a plaintiff's
constitutional right when the objectionable conduct occurs
outside of a criminal investigation or other form of governmental
investigation or activity.  Poe v. Leonard, 282 F.3d 123, 136 (2d
Cir. 2002); see Fontana v. Haskin, 262 F.3d 871, 882 ("Sexual

9

misconduct by a police officer toward another generally is
analyzed under the Fourteenth Amendment; sexual conduct by a
police officer of a criminal suspect during a continuing seizure
is analyzed under the Fourth Amendment); Jones v. Wellham, 104
F.3d 620, 628 (4th Cir. 1997) ("Because the harm inflicted did
not occur in the course of an attempted arrest or apprehension of
one suspected of criminal conduct, the claim was not one of a
Fourth Amendment violation, but of the violation of the
substantive due process right under the Fourteenth Amendment not
to be subjected by anyone acting under color of state law to the
wanton infliction of physical harm.");  Doe v. City of Hartford,
Civ. A. 3:03CV1454(JCH), 2004 WL 1091745, *1 (D. Conn. May 13,
2004)(plaintiff was not under arrest when she was sexually
assaulted by a police officer).

     Here, Love's claims are properly analyzed under the Fourth
Amendment. "Beyond the specific proscription of excessive force,
the Fourth Amendment generally proscribes unreasonable intrusions
on one's bodily integrity, and other harassing and abusive
behavior that rises to the level of unreasonable seizure."
Fontana, 262 F.3d at 878-79 (internal quotation marks and
citations omitted).  Further, "once a seizure has occurred, it
continues throughout the time the arrestee is in the custody of
the arresting officers."  Id. at 879-80.

               In Tennessee v. Garner the Supreme Court held
          that Fourth Amendment reasonableness "depends
          not only on when a seizure is made, but also
          how it is carried out." 471 U.S. 1, 8 (1985).
          Assessing the Constitutionality of police
          action during a seizure involves "a careful

> balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (quoting <u>Garner</u>, 471 U.S. at 8). In traditional excessive force cases, we consider the severity of the crime at issue, the threat that the suspect poses to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting flight. <u>Id.</u> Although the excessive force test is a useful analog, it is not directly applicable to assess the type of behavior alleged in this case, because there can be no "countervailing governmental interest" to justify sexual misconduct. "[W]here there is no need for force, <u>any</u> force used is constitutionally unreasonable." <u>Headwaters Forest</u>, 240 F.3d at 1199 (emphasis in original).

<u>Id.</u> at 880.

Plaintiff asserts that, when he was patted down by Officer Clark, "his hands got to my groin area, he grabbed my scrotum and said, 'You haven't felt like this in a long time, you faggot.'" Pl. Ex. A ¶11. He states that Officer Clark used profanity and called him a faggot, <u>id.</u> at ¶12-13, and that Officer Castle, the ranking officer, was present and did not intervene. <u>Id.</u> at ¶13. "Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable." <u>Fontana</u>, 262 F.3d at 880. Plaintiff also asserts that Officers Clark and Castle threatened to put a wig on him and place him in a cell with "a big, black, guy in a rear cell named Bubba." Pl. Ex. A at ¶22-24. "Castle opened the desk drawer and said he was

11

looking for a wig to put on me because 'Bubba' liked it when you wore a wig." Id. at ¶23. Plaintiff contends those comments and associated actions subjected him to intimidation at the police station. Id. at 21-24. His testimony is corroborated by two witnesses in deposition testimony and in a sworn statement. See Pl. Ex. C & F. If a jury finds that the physical touching and the comments occurred as described, these acts could support a finding of a Fourth Amendment violation. Fontana, 262 F.3d at 880-81.

The Court finds that plaintiff has identified at least one genuine issue of material fact that precludes summary judgment on the Fourth Amendment claim. Accordingly, summary judgment is denied.


2.    Claims Against the Town of Granby

Plaintiff has alleged that the Town of Granby has municipal liability for injuries arising from the defendant officers' actions. He contends that, despite the Town's awareness of prior impermissible conduct by defendants, it continued to employ the officers and this constituted gross negligence in its supervision of the defendant police officers. [Amend. Compl. ¶¶21-25]. Plaintiff asserts that the Town's inaction constituted a violation of his civil rights. Id. ¶25.

Under Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658 (1978), a municipality "may not be held liable under §1983 simply for the isolated unconstitutional acts of its employees.

12

In order to impose § 1983 liability upon a municipality, a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom." <u>Sorlucco v. New York City Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992) (internal citations omitted).

To prevail on a Section 1983 claim against a municipality, a plaintiff must plead and prove the following: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983) (citing <u>Monell</u>). Absent a showing of a chain of causation between an official policy or custom and the plaintiff's injury, <u>Monell</u> prohibits a finding of liability against a municipality. <u>See</u> <u>id.</u>

Plaintiff's lack of supervision claim against the town is based on a copy of a memorandum entitled "citizen complaint," dated February 16, 2000, written by then-Captain David Watkins, memorializing his contact with one Clinton Perry regarding a motor vehicle stop conducted by Officer Clark. [Pl. Ex. E]. Captain Watkins stated that the complainant was "upset over what he perceived as [Officer] Clark's <u>threatening demeanor</u> during the contact." [Pl. Ex. E at 1 (emphasis added)]. "This specifically dealt with a comment regarding the wearing of seat belts and 'I'll be looking for you.'" <u>Id.</u>  The memorandum states, "[Officer] Clark was advised that this was the <u>third</u> instance wherein a person had contacted the department in regards to [Officer] Clark's demeanor during a traffic stop." <u>Id.</u> (emphasis

13

added). The Captain directed Officer Clark "to follow the instructions on the cover of the Infraction Complaint and Misdemeanor Summons books on how to initiate contact with a motorist and to avoid ancillary conversation." Id. Other evidence provided in opposition to summary judgment included the Town's responses to interrogatories in which David L. Watkins, now the Granby Police Chief, stated that, from February 16 through December 27, 2000, Officer Clark was the subject of five citizen complaints, was disciplined for one of them and talked to regarding another complaint, both instances occurring before Love was stopped on November 11, 2000. [Pl. Ex. D ¶ 22-25]. Plaintiff contends a total of eight citizen complaints against Officer Clark were known to the Town in 2000, five made before the events of November 11.

Nevertheless, summary judgment must be granted on the failure to supervise claim against the Town. To avoid summary judgment plaintiff must provide evidence from which a reasonable juror could conclude that "municipal inaction such as the persistent failure to discipline subordinates who violated civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell." Batista v. Rodriquez, 702 F.2d 393, 397 (2d Cir. 1983). Plaintiff has not provided any evidence that any prior citizen complaint against Officer Clark rose to the level of a constitutional violation.  Evidence of eight citizen complaints against Officer Clark, one involving a motor vehicle

14

stop for failure to wear a safety belt, is insufficient to establish a policy of inadequate discipline. See Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir.), cert. denied, 449 U.S. 1016 (1980). For each complaint but one, the record consists of the name of complainant and date of the incident, with little or no explanation.[4] From this list, a reasonable juror could not conclude that the Town had a history of ratifying unconstitutional conduct by Officer Clark, or that Officer Clark had previously engaged in unconstitutional conduct while stopping motorists, let alone the type of conduct alleged in this case. Plaintiff's failure to supervise claim against the Town must therefore be dismissed.

CONCLUSION

For the reasons stated, defendants' Motion for Summary Judgment **[Doc. #46]** is **GRANTED** in part and **DENIED** in part. Summary Judgment is **GRANTED** on plaintiff's claims of false arrest and false imprisonment against defendants Clark and Castle and the Monell claim against the Town of Granby.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of

---

[4]The following information was provided by Chief Watkins regarding the five citizen complaints against Officer Clark: On February 16, 2000, "[c]omments to the public;" July 28, 2000, "[o]peration of police vehicle;" September 17, 2000, "[h]arassment on 'way he looked;'" December 19, 2000, "[f]ear of future motor vehicle stops as a 'marked man," and December 27, 2000, "[l]ack of probable cause in making motor vehicle stops." [Pl. Ex. D]. No further information was provided.

15

this order. Failure to object within ten (10) days may preclude
appellate review. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and
6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local
Rules for United States Magistrates; <u>Small v. Secretary of
H.H.S.,</u> 892 F.2d 15 (2d Cir. 1989)(per curiam); <u>F.D.I.C. v.
Hillcrest Assoc.,</u> 66 F.3d 566, 569 (2d Cir. 1995).


    Dated at Bridgeport, this 12th day of July 2004.



                         __/s/_____
                         HOLLY B. FITZSIMMONS
                         UNITED STATES MAGISTRATE JUDGE

16